IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA            *

vs.                                 *    Case No.: 1:25-mj-00972-JMC

David Kaufman                       *

## Memorandum Summarizing the Court's
## Reasoning Regarding Detention Decision

The following summarizes the Court's reasoning for ordering Defendant's detention pending trial. The Court also incorporates its reasons stated on the record, and its review of both the Government's and Defendant's written memoranda on the detention issues. (ECF Nos. 2 and 12, respectively).

Defendant, 45, is currently charged with two separate violations of 18 USC 2422(a) involving the same eighteen-year-old teenager (Victim 1) whom Defendant enticed to travel from Massachusetts to Maryland to engage in paid sex with Defendant. Because the underlying crime does not meet the criteria of Section (f)(1) of 18 USC 3142 (the "Bail Reform Act" or "BRA"), the Government instead sought a detention hearing pursuant to Section (f)(2)(A), "serious risk of flight" and f(2)(B), "serious risk of obstruction" of the BRA. In a preliminary determination at the time of Defendant's initial appearance on April 16, 2025, for the reasons stated on the record, the Court found that the Government's proffer as to both issues was sufficient to grant the Government's motion to hold a detention hearing, scheduled for April 17, 2025.[1] In summary, the

---

[1] In reaching this decision, the Court accepted for purposes of argument Defendant's contention that use of the word "serious" in Section (f)(2) required an enhanced showing over, for example, "risk of nonappearance" set forth in Section (g) of the BRA. *See, e.g., U.S. v. Rodriguez-Fuentes*, 2025 WL 711955 at *2 (E.D. Ky. Mar. 5, 2025) ("Congress's deliberate use of the adjective "serious" to modify "risk of flight" further heightens the threshold....").

Government has proffered, *inter alia*, that Defendant had several on-line aliases, had taken efforts to shield his activities from law enforcement, and had a standard of living that exceeded even his generous monthly income, suggesting additional unknown assets or accounts.[2] *See U.S. v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) ("Relevant factors that support a serious risk finding include the use of a number of aliases, unstable residential ties to a community, efforts to avoid arrest, or hidden assets").

In anticipation of the April 17, 2025, detention hearing, the Government submitted a memorandum in support of detention (ECF No. 2), and Defendant submitted his own memorandum in support of release (ECF No. 12). In its memorandum, the Government proffered that, although the two counts in the indictment involved an eighteen-year-old adult, the recruitment of that individual was facilitated by a seventeen-year-old minor who allegedly had previously engaged in sex with Defendant in exchange for money and gifts. (ECF No. 2 at 3-6). Additionally, the Government set forth a detailed proffer regarding certain unindicted conduct involving alleged sex trafficking and sexual exploitation with four other minors ranging in age from fourteen to seventeen. *Id.* at 7-9.

For its part, the Defense pointed to Defendant's lack of criminal record, length of residence, the recommendation of Pretrial Services for release conditions, and the suitability of two alternative third-party custodians. (ECF No. 12).

At the detention hearing, the Government reiterated the arguments made in its memo, and provided some additional supporting facts, particularly on the issues of the risk Defendant

---

[2] Defendant is a wealthy individual with trust fund income of approximately $30,000 a month who lives at the Four Seasons in Baltimore in an apartment and with a luxury automobile also paid for by the same trust. Notwithstanding those significant assets, Defendant is also apparently able to pay a monthly credit card debt that routinely is in the high five figures and sometimes six figures, suggesting additional assets.

2

might tamper with or destroy evidence if released such as identifying a seized device known as a "Red Key USB" used to permanently erase data, and the specter of dozens of on-line accounts to which Defendant might still have access given his multiple on-line personas. The Government also found an application on Defendant's phone that would allow him to disguise his phone number in communications with others, suggesting a level of deception and technical sophistication in Defendant's ability to recruit others including minors for paid sex.

For his part, Defendant again emphasized his length of residence, business ties to the community in terms of owning a retail game business and participation on the board of the Baltimore Aquarium, the recommendation for release by Pretrial Services, and his lack of criminal record. The Defendant also proffered a release plan, although the two alternative proposed third-party custodians were not present.

The April 17, 2025, detention hearing was started, but, after hearing argument from both parties, was continued to April 18, 2025, to allow for appearance of the third-party custodians. Upon resumption on April 18, 2025, the Court questioned Defendant's mother, age 69, who resides in Las Vegas, and a family friend, age 68, who resides in Jefferson Township, Pennsylvania. Both custodians were acceptable to Pretrial Services.

Given the current charges involving paid sex with an (albeit eighteen-year-old) adult, the Court might otherwise be inclined to release Defendant to one of the proposed third-party custodians under strict conditions. Additionally, the Court always considers the recommendation of Pretrial Services as an important consideration in its decision-making, given Pretrial Services' experience with hundreds of supervisees and its corresponding insights into who can likely be successful on release. Further, the Court historically has not given great

3

weight to unindicted conduct. And, the proposed third-party custodians are deemed acceptable by Pretrial Services and the Court.

That said, the Court will order detention in this case. In reviewing the BRA Section (g) factors, the nature and, more importantly, circumstances of the underlying offense include a proffer regarding facilitation by a minor in both instances, even if that aspect is not part of the current charges. The proffer as to the current charges is quite strong, although the Court is careful not to give that factor undue weight. The history and characteristics of Defendant are complicated. On the one hand, Defendant has lived in Baltimore for twelve years, has some business ties to the community, and has no criminal history. On the other hand, other than his retail business, Defendant appears to own no property here (his apartment is owned by his trust fund), and his main source of income is not his retail business, but a generous trust allowance which does not tie him to any particular location. Further, Defendant's ample wealth would allow him to leave this jurisdiction for anywhere in the world to live quite comfortably. While it is true that Defendant's passport can be confiscated to impede that, obtaining new travel documents can be accomplished, particularly if one has the means to do so. The probability that additional charges involving, at a minimum, child sexual exploitation will be lodged (which would likely carry a significant mandatory minimum sentence) provides a stronger incentive to flee than other types of charges.

But, most importantly, the Court is concerned with the risk that Defendant's release might pose both to the minors allegedly involved in the unindicted conduct, and the community of minors available through social media and the internet. The unindicted alleged conduct here involving four minors, one as young as fourteen, is supported by a Government proffer that is much more detailed than is often the case. This alleged conduct includes extensive use of the

4

internet, something that is particularly hard to effectively prohibit in today's world where both the internet and access to it are ubiquitous. Defendant is also sophisticated in this regard, allegedly having multiple on-line aliases and sophistication with encryption, and disguising his true identity through technical means. Additionally, Defendant has strong motivation to attempt to tamper with or destroy evidence and had taken at least some steps to do so prior to his arrest according to the Government. Defendant's alleged pattern of using cash, expensive gifts, and other manipulation (such as threatening self-harm to gain compliance from minor victims) also presents a real risk that such tactics could be deployed against minor witnesses (who might already have reluctance to cooperate with law enforcement) to prevent or shape their testimony. The Court is simply not satisfied that any conditions it might put in place would be sufficient to reasonably reduce such risks.

Defendant has been advised that he has the right to appeal this detention decision to a United States District Judge who will review it *de novo*.

4/18/2025
Date

J. Mark Coulson
United States Magistrate Judge